IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARY L. WEATHERS, ) | Civil Action No. 3:10-272-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on October 11, 2006, alleging disability as of July 6, 2006. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 24, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. The ALJ issued a decision dated September 2, 2009, denying benefits and finding that Plaintiff was not disabled because she was able to perform her past relevant work as a general office clerk.

Plaintiff was fifty-nine years old at the time of the ALJ's decision. She has a high school education with past relevant work as a general office clerk. Plaintiff alleges disability due to degenerative joint disease of the knees and degenerative disc disease of the lumbar spine.

The ALJ found (Tr. 13-19):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since July 6, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the knees and degenerative disc disease of the lumbar spine (20 CFR 404.l520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day with an at will sit/stand option. The claimant can occasionally climb, kneel, crouch, and crawl. Such a residual functional capacity is well supported by the weight of the evidence of record.

6. The claimant is capable of performing past relevant work as a general office clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2006 through the date of this decision (20 CFR 404.1520(f)).

On December 4, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-3). Plaintiff filed this action on February 4, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42

U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL RECORD**

On April 15, 2002, Plaintiff complained of back pain and burning symptoms in her right leg to Dr. Leonard Forest at Southeastern Spine Institute. An MRI of her lower back showed a degenerative disc with superimposed protrusion and spondylosis at the L5-S1 level. Tr. 277.

Plaintiff reported back pain to Kimberly Davis-Seagle, an internist, in April 2006. Tr. 199-200. An MRI of her lower back revealed a normal lumbar spine. Tr. 205. On July 24, 2006, Plaintiff reported back pain which increased with bending, climbing stairs, walking, and sitting. She did not take medication regularly for pain. Dr. Davis-Seagle noted Plaintiff was "active" and walked for exercise. Examination revealed that Plaintiff was alert and oriented; had a normal gait, balance, and motor strength; had intact sensation; and had no tenderness in her extremities or spine. The cause of the reported pain was noted by Dr. Davis-Seagle to be uncertain. Tr. 197-198.

In August 2006, Plaintiff was treated at the Nason Medical Center (an urgent care facility) for back pain which reportedly was exacerbated with movement. A muscle relaxant (Skelaxin) and narcotic pain medication (Lortab) were prescribed. Tr. 190-192.

Plaintiff reported joint pain in her left shoulder, lower back, and right knee in October 2006. She told Dr. Davis-Seagle that her pain was aggravated by sitting still, rest, lying in bed for long

hours, and long automobile rides. Plaintiff reported that non-steroidal anti-inflammatory medication, exercise, walking, movement, and local heat helped relieve her pain. Plaintiff said she reduced her work schedule to ten hours a week due to her symptoms. Examination revealed that Plaintiff was alert, oriented, and in no distress; had a normal gait, balance, and motor strength; and had no tenderness in her extremities or spine. Dr. Davis-Seagle wrote that the cause of Plaintiff's reported pain was uncertain, and adjusted Plaintiff's medication. Tr. 194-196. In November 2006, an MRI of Plaintiff's mid and upper back revealed cervical spondylosis at C3-4, C5-6, and C6-7, and mild spondylotic changes at T1-2 and T3-4. Tr. 230-231.

Plaintiff was examined for knee pain by Dr. Waddell H. Gilmore on December 5, 2006. Dr. Gilmore noted Plaintiff had a history of osteoarthritis in her knees, and had not been to his office in five years. Plaintiff also reported left shoulder pain, which she said was getting better. She took Celebrex on a daily basis. Radiographs of Plaintiff's knees showed mild to moderate degenerative changes. On examination, Plaintiff had some crepitus in her knees, but full range of motion. Dr. Gilmore did not observe any tenderness to palpation of Plaintiff's left shoulder. He assessed osteoarthritis of the knees and possible cervical radiculopathy on her left side (which he noted was improving), and recommended physical therapy. Plaintiff declined a corticosteroid injection. Dr. Gilmore noted that Plaintiff would check back if her symptoms did not improve in four weeks. Tr. 207-208, 243-244.

Plaintiff underwent a consultative examination with Dr. Daniel Bates of West Ashley Family Medicine on December 27, 2006. Plaintiff reported experiencing back pain for four years and bilateral knee pain for three years, which limited her ability to walk, stand, or sit for extended periods. She said she could stand or walk for thirty minutes at a time and she could sit for sixty

4

minutes at a time. Plaintiff denied any problems eating, dressing, or bathing, and acknowledged she cooked, drove, and worked part-time. Her daughter (who owned a cleaning service) did housework for her. Dr. Bates noted that Plaintiff walked with an antalgic gait, had crepitus in both knees, and had a restricted range of motion in her lumbar spine secondary to pain. Straight-leg raise testing was negative, and range of motion in her knees was normal. Tr. 211-214. On December 27, 2006, x-rays of Plaintiff's lower back revealed lower lumbar mild levoscoliosis with right facet hypertrophy (left greater than right). It was noted that x-rays of her knees showed mild osteoarthritis, as well as possible loose bodies or ligamentous calcifications in her right knee. Tr. 209-210. On April 5, 2007, Dr. Davis-Seagle indicated that Plaintiff had chronic arthritis and chronic back pain. Tr. 227-229.

Dr. Mary Lang, a State agency physician, reviewed Plaintiff's medical records on June 29, 2007. She opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk and could sit for six hours in an eight hour workday; and could only occasionally climb, kneel, crouch, and crawl. Tr. 246-253.

On July 17, 2007, Plaintiff reported experiencing pain in her lower back region that radiated down her right leg. She said her pain was aggravated by bending, standing up, and walking. Dr. Davis-Seagle noted Plaintiff was active and walked for exercise; was alert and oriented; and had normal gait, balance, and motor strength. She referred Plaintiff to Dr. Steven Poletti of the Southeastern Spine Institute. Tr. 324-325.

On July 30, 2007, Plaintiff complained of continuing pain in her lower back that radiated into her buttocks, hips, and upper thighs. Dr. Poletti noted that a recent MRI revealed disc degeneration at the L5-S1 level, along with minor multi-level thoracic disc bulging. He recommended epidural

injections, which were administered by Dr. John Johnson at East Cooper Regional Medical Center in July 2007 and March 2008. Tr. 286, 288, 311, 314.

Plaintiff returned to Dr. Poletti on April 28, 2008, complaining of continuing back pain. Dr. Poletti noted that Plaintiff's previous MRI revealed disc disruption at the L5-S1 level with disc space narrowing, but did not think it was an obvious surgical situation. He opined, however, that Plaintiff could eventually be a candidate for surgical intervention, including discectomy and interbody fusion, but it "would be a last resort." Dr. Poletti recommended observation and consideration for updated MRI, and gave Plaintiff a prescription for a lumbosacral corset. Tr. 287.

In July 2008, Plaintiff told Dr. William Dawson that she worked two eight-hour shifts per week at an office clerk job for K-Mart (sixteen hours per week). Tr. 296. Plaintiff reported left shoulder pain, which began five days previously, to Dr. Davis-Seagle on October 16, 2008. Examination revealed limited range of motion in her left shoulder. Tr. 330-332. On October 29, 2008, an MRI of Plaintiff's lumbar spine showed evidence of noncompressive lumbar spondylosis with potential contact with both S1 nerve roots, more right than left-sided. X-rays of Plaintiff's left shoulder were unremarkable. The same day, Plaintiff reported to Dr. Poletti that she was experiencing increased groin pain. Straight-leg raise testing was positive, and she had subjective dysestheia in the posterolateral aspect of her leg. Dr. Poletti noted that the lumbar MRI revealed some advanced degeneration at the lumbosacral junction, for which he recommended a facet block with selective epidural steroid injection. He again opined that Plaintiff might be a candidate for anterior lumbar fusion, but discouraged her from surgery at that time. Tr. 290-293.

Dr. Davis-Seagle completed a questionnaire at the request of Plaintiff's attorney on March 10, 2009. She opined that Plaintiff was capable of performing work involving prolonged sitting, but

would need to rest and/or take breaks as needed in order to complete a normal work day. Dr. Davis-Seagle also indicated that Plaintiff would occasionally need to elevate her legs to a ninety degree angle while seated in order to alleviate pain and swelling from arthritis in her knees. Tr. 335.

## **HEARING TESTIMONY AND OTHER EVIDENCE**

In an undated Disability Report, Plaintiff reported that she reduced her work hours because of downsizing. Tr. 134. In an undated letter, K-Mart manager Georgette Green wrote that Plaintiff worked for K-Mart for 30 years. She stated that, since 2006, Plaintiff experienced limitations in performing certain unspecified job duties. Ms. Green provided that, as a result of Plaintiff's limitations, Plaintiff's schedule had been reduced to "no more than an average of 8-10 hours weekly." Tr. 175.

At the hearing before the ALJ, Plaintiff stated she worked primarily as an office clerk during the prior fifteen years, but the job often required her to work on the sales floor and perform stocking. She testified she loaded merchandise on occasion, lifting up to thirty pounds. Tr. 29-30. Plaintiff testified she was currently working eight to ten hours a week doing invoicing and cashiering, which was performed primarily in a sitting position. Tr. 30-31.

Plaintiff testified she had arthritis in both knees, and knee and back pain made it difficult for her to perform work requiring extended sitting. She said she alternated between sitting and standing in order to obtain relief of her discomfort. Plaintiff estimated she could sit for approximately one and one-half to two hours before she needed to stand, but then could stand for less than an hour. Tr. 32-33. Although she had undergone two epidural injections in 2008 at Southeastern Spine Institute, Plaintiff said her lower back pain still prevented her from bending and stooping. Tr. 35, 39.

Plaintiff testified she went on a reduced work schedule in October 2006, working two days a week for four to five hours a day. She indicated she essentially performed only office work since reducing her schedule, and she primarily performed this job in a sitting position. Tr. 37. She needed to stand at times while working, but was unable to do any of the paperwork required by her part-time job from a standing position. Plaintiff said she was more or less taking a break when she was standing, but her employer allowed her to do so as an accommodation due to her long service with the company. Tr. 38. Additionally, Plaintiff testified she had problems holding and carrying things with her left (dominant) arm due to arthritis in her fingers. She also said she experiences pain in her left shoulder. Plaintiff indicated she had vision problems that make it difficult to do paperwork. Tr. 38-39.

During a day in which she did not work, Plaintiff sat in her recliner with her feet up most of the time or laid down in bed in order to obtain relief from back pain. She said she tries to wash dishes, but needs a chair to sit on at the sink due to back pain. Plaintiff did not believe she was capable of performing office work on an eight hours a day, five days a week basis. Tr. 40.

## **DISCUSSION**

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence and the ALJ erred: (1) in making her residual functional capacity ("RFC") findings; (2) by failing to give proper weight to the opinion of Plaintiff's treating physician; (3) by failing to comply with Social Security Ruling ("SSR") 00-4p; and (4) by finding that Plaintiff was capable of performing past relevant work as a general office clerk, as such a finding is inconsistent with the testimony of the VE. The

Commissioner contends that the ALJ's decision is supported by substantial evidence[1] and free from legal error, the ALJ reasonably found that Plaintiff retained the RFC to perform a range of light work, and the ALJ reasonably found that Plaintiff could perform her past relevant work as an office clerk.

A.      Treating Physician/RFC

Plaintiff alleges the ALJ erred in rejecting Dr. Davis-Seagle's opinion that she would need to rest and/or take breaks as needed in order to complete a normal workday and would need (because of her arthritis in her knees) to occasionally elevate (to a ninety degree angle) her legs while seated to alleviate pain and swelling. She argues that it was inconsistent for the ALJ to find that the evidence supported part of Dr. Davis-Seagle's opinion, but to find that it did not support the remainder of the opinion. Plaintiff argues that the ALJ, in rejecting Dr. Davis-Seagle's opinion, disregarded Dr. Bates' findings that Plaintiff had an antalgic gait, crepitus in both knees, and limited range of motion in her lumbar spine due to back pain. She also argues that the ALJ's analysis fails to take into account significant objective evidence relating to back pain (including MRI scans) and the findings of Dr. Poletti. The Commissioner contends that the ALJ reasonably found that Plaintiff could perform a range of light work based on Dr. Lang's opinion and because Plaintiff continued to work part-time after her alleged onset of disability; she worked more hours than she said she did

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

(sixteen rather than her reported eight to ten hours a week); she remained active, cooked, drove, and exercised; her symptoms responded to conservative treatment; and the medical record (other than Dr. Bates' finding of an antalgic gait) noted that Plaintiff had normal gait, balance, and motor strength. The Commissioner contends that the ALJ reasonably found that Plaintiff could perform a reduced range of light work and she reasonably discounted Dr. Davis-Seagle's opinion because it was not supported by Dr. Davis-Seagle's own treatment notes which do not document any incidents of knee swelling and affirmatively note the absence of edema, and do not contain any recommendation that Plaintiff elevate her legs or take breaks. Additionally, the Commissioner argues that the ALJ properly discounted part of Dr. Davis-Seagle's opinion to the extent it was based on Plaintiff's subjective statements because he properly found that Plaintiff was not fully credible.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations;

(2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. SSR 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Here, the ALJ found that Dr. Davis-Seagle's opinion was generally well supported by the weight of the evidence and accorded it controlling weight. Tr. 17. However, the ALJ found that Dr. Davis-Seagle's opinion was only entitled to limited weight as to her restrictions that Plaintiff needed to elevate her legs occasionally while seated (to a ninety degree angle) in order to alleviate pain and swelling, and needed to rest and/or take breaks as needed in order to complete a normal workday. Id.

Substantial evidence supports the ALJ's decision to discount Dr. Davis-Seagle's opinion that Plaintiff needed to elevate her legs occasionally to alleviate swelling. Specifically, the ALJ discounted this part of Dr. Davis-Seagle's opinion because no swelling, edema, warmth, or erythema was ever noted upon examination of Plaintiff's knees; Plaintiff was routinely found to have a normal gait, normal range of motion of her knees, normal balance, and intact strength; and there was no indication in the medical records that elevation of Plaintiff's lower extremities was ever recommended. The ALJ, however, did not address why she discounted Plaintiff's need to elevate her legs to alleviate pain and did not present any reason why she discounted the opinion that Plaintiff needed to rest and/or take breaks. Objective medical testing (including MRI findings showing disc degeneration at L5-S1, radiographs showing mild to moderate degenerative changes to Plaintiff's knees, and MRIs showing cervical spondylosis) as well as Dr. Bates' observation that Plaintiff

walked with an antalgic gait, had crepitus in both knees, and had a restricted range of motion in her lumbar spine secondary to pain may lend support to Dr. Davis-Seagle's opinion. As the ALJ does not appear to have fully considered Dr. Davis-Seagle's opinion in light of all of the evidence, it is unclear whether the ALJ's findings concerning Plaintiff's RFC are supported by substantial evidence.

  B.  <u>Past Relevant Work/Hypothetical to the VE/SSR 00-4p</u>

    Plaintiff alleges that the ALJ erred because he never posed a hypothetical question to the VE that included an at-will stand/sit option as provided in the ALJ's RFC.  Plaintiff also asserts that the ALJ erred in finding that she could perform her past relevant work because the ALJ failed to ask the VE if his testimony conflicted with the Dictionary of Occupational Titles ("DOT") as required by SSR 00-4p.  The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff could do her past relevant work as an office clerk because the VE testified that a person who needed to make brief changes in position on an as-needed basis could do the job. Although the Commissioner concedes that the ALJ did not make the required SSR 00-4p inquiry, he argues that such error is harmless because Plaintiff did not identify in her brief what conflict there was between the VE's testimony and the DOT.

  At the fourth step of the disability inquiry,[2] a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy.  SSR 82-61.  The claimant

---

[2] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. <u>See</u> 20 C.F.R. § 404.1520.   The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy.  <u>See id.</u>

12

bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

The ALJ found that Plaintiff had the RFC to perform a range of light work, but needed to be able to sit and stand "at-will." The ALJ's determination that Plaintiff could perform her past relevant work as she performed it is not supported by substantial evidence. The VE testified that the sales associate part of Plaintiff's job was medium (not light) work.[3] Tr. 41-42. Additionally, the VE testified that the sales associate part of Plaintiff's job generally would not allow a person to chose when they sat down. Tr. 44. Although Plaintiff appears to have worked as much as sixteen hours a day after the time she alleges she became disabled at a job which did not include the sales associate or stocker part of the job, there is simply no evidence that she ever performed this full-time or as substantial gainful activity.

It is unclear from the VE's testimony whether Plaintiff's past relevant work as generally performed in the economy would allow a claimant to sit/stand at will. In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

---

[3] Prior to Plaintiff's alleged onset of disability, she worked full time at a job which included both office work and work on the sales floor stocking. See Tr. 29.

The ALJ, in posing the hypothetical to the VE, specifically stated that she did not "want to say sit/stand at will. That's what I'm trying to avoid...." Tr. 44. Instead, she asked whether Plaintiff's past relevant work would accommodate a need to alternate "an hour or two sitting, an hour standing, back to an hour sitting, that type of thing?" In response, the VE testified that it would not. See Tr. 44-45. In his response, the VE did state that "[g]enerally speaking, in an office area we can wiggle and squirm and change positions and stand up and then be reading something on your desk. Brief accommodations can be handled but the need to go away for an hour, no, ma'am." Tr. 45. It is unclear from this testimony whether Plaintiff's past relevant work as a general office clerk (as it is generally performed) would allow for a sit/stand option at will.

>Additionally, the ALJ did not comply with SSR 00-4p which provides:
>
>Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE and VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

Id. Here, the ALJ stated in her decision that she specifically asked the VE, pursuant to the requirements set forth in SSR 00-4p, whether the VE's opinions were consistent with the DOT, to which the VE answered in the affirmative except at to the sit/stand work requirements. Tr. 19. Review of the hearing transcript, however, reveals that the ALJ never posed such a question. See Tr. 40-47. The ALJ also stated that the VE testified that the information about the sit/stand requirement was based on his professional knowledge and/or observations. Tr. 19. Again, the hearing transcript fails to reveal such.

14

The ALJ acknowledged that there is a conflict between the VE's testimony and the DOT. She failed, however, to comply with the requirements of SSR 00-4p. This action should be remanded to the ALJ to do so.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to fully evaluate the opinion of Plaintiff's treating physician (Dr. Kimberly Davis-Seagle), to determine Plaintiff's RFC based on all of the evidence, to determine whether Plaintiff's past relevant work would allow an at-will sit/stand option, to address the requirements of SSR 00-4p, and (if necessary) to continue the sequential evaluation process.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey  
United States Magistrate Judge

August 25, 2011  
Columbia, South Carolina